*Eastern Dis.*
*January, 1833.*

UNION BANK
*vs.*
M'DONOUGH
ET ALS.

A new trial annuls the execution on the former judgment.

---

## UNION BANK *vs.* M'DONOUGH ET ALS.

APPEAL FROM THE COURT OF THE CITY AND PARISH OF NEW-ORLEANS.

The right of a plaintiff, to propound interrogatories to the defendant, depends on the capacity of the former to maintain his suit.

Stockholders in a bank, can be reached only through those provided by the charter to represent them.

EASTERN DIS.
January, 1833.

UNION BANK
vs.
M'DONOUGH
ET ALS.

A bank is responsible for the acts of the directors, refusing to permit an individual to subscribe for stock.

An act which attempts to evade the provisions of the charter, can confer no rights on the party, by whom it was committed.

This action was brought by the Union Bank of Louisiana, to erase the subscriptions of the defendants, from the book of subscription of the bank. Damages were claimed of the defendants, for the injury sustained in consequence of the subscriptions.

The charter of the bank provides, that citizens of this state, and owners of land in this state, are the only persons who can subscribe for its stock. In case the subscriptions exceed the capital fixed by law, the excess must be deducted from the stock, for which sufficient security is not offered, and then from the largest subscription, so that no subscription shall be reduced, while a larger one remains.

The bank alleges, that M'Donough made simulated sales of his property to the other defendants, in order to enable them to subscribe for him. Sufficient security was offered on the subscriptions, exceeding, by several millions of dollars, the capital of the bank fixed by law. The directors passed a resolution, requiring those who, to secure their stock, offered property of which the titles were dated after the subscription book was opened; to make affidavit, that they were *bona fide* owners of such property, and that they had not subscribed with the view to favor the person who had passed them an apparent title.

The defendants refused to make the affidavit required by the directors. Interrogatories were annexed to the petition, to be answered by the defendants, under oath, in open court.

On the day fixed, the defendants did not appear to answer the interrogatories propounded to them. Judgment by default was entered, and another day fixed for defendants to answer the interrogatories.

Before this day arrived, an answer was filed, after setting aside the judgment by default. The defendants denied all simulation; denied the right of the bank to maintain the action or propound the interrogatories, and averred the subscriptions were legal, and had been received by the bank.

EASTERN DIS.
*January*, 1833.

UNION BANK
*vs.*
M'DONOUGH
ET ALS.

The defendants failed to answer the interrogatories, and the court after hearing testimony, and taking time to advise, rendered judgment in favor of the bank. The defendants appealed.

*Grymes* and *Mazureau*, for appellants.

1. The bank in its corporate capacity, has no right to maintain this action. No injury can result to it in that capacity.

2. They have no right to propound the interrogatories annexed to their petition.

3. Admitting the subscription to have been made, in the manner, and for the purposes set forth in the petition, it is not against the charter, the general law of the land, or good morals.

4. That the contract was complete by the receipt of the subscription by the commissioners, and the exhibition of the titles at the time, and cannot now be annulled.

*Denis,* contra.

PORTER, J. delivered the opinion of the court.

By the charter of this bank, its capital is limited to a certain amount; and in case the sums subscribed, exceed the capital, the directors are required to deduct the amount of such excess, from—First, the stock of which sufficient security shall not be offered, and—Second, from the largest subscriptions in such manner, that no subscription shall be reduced in amount, while any remains larger.

Eastern Dis.
January, 1833.

UNION BANK
vs.
M'DONOUGH
ET AL.

. The petition states, that the subscriptions, for which good security have been offered, greatly exceed the amount of the capital, and that one of the defendants, has made false and simulated sales to the others, of property belonging to him; that he has procured subscriptions to be made on the security of his property in their names, but for his benefit, and that by these means he will obtain a greater proportion of stock, than if he had subscribed in his own name.

It concludes by a prayer, that these subscriptions be crased from the books of subscription of the bank, and that the defendants pay the sum of one thousand dollars, the damages sustained by the petitioners.

The answer denies any illegal contrivance, or simulation; denies that the directors of the bank can maintain this action; and avers, that the defendants have severally subscribed to the stock of said bank, and that by the acceptance of the subscriptions, on the exhibition of their titles, to the managers, charged to receive them, the contract was perfect, and binding on both parties.

There was judgment in the court below, for the plaintiffs, and the defendants appealed.

Interrogatories are annexed to the petition, which, if answered in the affirmative, would establish all the facts on which this action is brought. As the defendants have declined answering them, the law draws the same conclusion from their silence, as it would from their avowal.

The right of a plaintiff to propound interrogatories to the defendant, depends on the capacity of the former to maintain his suit. The legality of these interrogatories has been contested, but the right to propound them must necessarily depend on the capacity of the plaintiffs, to maintain the present action; for if they have that right, there is nothing in our law which refuses to them, the same means of establishing the truth of their allegations, which it accords to all other litigants.

That capacity, however, is denied, and as the case mainly turns on the correctness of this position, it has been very fully discussed at the bar.

It is one, however, which has not presented much difficulty to our minds. The first directors appointed under the charter, were the agents of all the subscribers, in admitting these

subscribers to become stockholders, on complying with the conditions, which the act of incorporation imposes. As the agents, or representatives of their principals, their acts must be considered, as the acts of the majority of those whom they represent. Stockholders in a bank can only be reached, in a court of justice, through those whom the charter provides shall represent them, because it is only the act of the majority which can carry into effect, or refuse the exercise of rights conferred by the act of incorporation. Hence, it follows, that if an action could not be brought against, or by the corporation, in a case, such as this, it could not be brought at all; or if brought, it could have no useful purpose. A decision between two of the stockholders, holding different interests in this matter, could not bind the corporation, who can only appear in court through the president and directors, and until a decision was made in a case where they were legally represented, the question of right could not be settled; for the decision of the board, rejecting the subscriptions, would still stand unaffected by a decree to which they were not parties. There is a case in the books, which bears no inconsiderable analogy to that now before us. It is that of *Gray* vs. *President, Directors & Co. of the Portland Bank*, and will be found reported in 3 *Massachusetts Reports*, 364. By the charter of that bank, power was given to the original subscribers, to enlarge their capital at a future time. The plaintiff insisted, that he was one of those who were entitled by law, to a preference in subscribing for the new stock. The directors thought otherwise, and divided it among other persons. A special action on the case was brought, setting out these facts. The court held, that the bank was responsible for the acts of their agents, and that the plaintiff was entitled to recover from the corporation, the damages he had sustained, by the illegal act of those who had represented it. If the doctrine recognized by the court in that case be correct, as we apprehend it is, that the bank is responsible for the acts of the directors refusing to permit an individual to subscribe, it follows that the bank has the right to oppose any one improperly becoming a sub-

*Margin notes:*

Eastern Dis.
January, 1833.

UNION BANK
vs.
M'DONOUGH
ET AL.

Stockholders in a bank, can only be reached thro' those provided by the charter to represent them.

A bank is responsible for the acts of the directors, refusing to permit an individual to subscribe for stock.

EASTERN DIS.
January, 1833.

UNION BANK
vs.
M'DONOUGH
ET AL.

scriber, because the illegal admission of him would render the corporation liable to those, who in consequence of it, were rejected altogether, or admitted for a less sum than they would otherwise be entitled to. If the plaintiffs, instead of instituting this suit, had acted on the defensive, and compelled the defendants to resort to legal means to admit them as stockholders, there cannot be a doubt, that whether they resorted to a *mandamus*, or commenced an action, the proceedings must have been directed against the plaintiffs. They could not have selected any individual stockholder, whom they might suppose had an interest adverse to theirs, and made him defendant. If this proposition be admitted, it would seem to be equally clear of doubt, that the persons who could alone defend such an action, are the proper parties, plaintiffs, where a suit is instituted, which presents the same matters for decision.

It was contended, that the act of receiving the subscription, by the commissioners, and the exhibition of the titles to them, rendered the contract complete and binding on all parties. Under the charter of the Union Bank, we agree fully with the distinction taken at the bar, between *subscribers* and *stockholders*. The third section of the act of incorporation, expressly recognizes it, in relation to country subscribers, for it enacts, that the managers, after receiving the subscription, shall send the titles and documents to the city of New-Orleans, in order that the board of directors may finally decide on the validity and sufficiency of the titles so transmitted to them. The distinction is not made in such express terms, in regard to the city subscription, but we think it clearly results from the charter, that it was not the intention of the legislature, to rest the final decision of these matters with the commissioners who received the subscriptions in New-Orleans. The first section of the charter provides, that if there be an excess in the subscription list, the amount of that excess shall be reduced, first by striking off those who have not offered sufficient security; a provision which strongly implies that the admission of a person to subscribe, does not complete the contract, for it supposes, first, the case of a subscription, which

has been already received, and then provides that it may be rejected. If to this enactment, we add that found in the 24th section, that the board of directors shall be the judges of the sufficiency of the mortgages offered for the stock, and shall have the power to refuse or reject the same, if not sufficient, we arrive, without hesitation, at the conclusion that it was not contemplated the managers for receiving subscriptions, should decide finally on the sufficiency of the security offered.

EASTERN DIS.
*January*, 1833.

UNION BANK
*vs.*
M'DONOUGH
ET AL.

But it is contended, the directors have no power to take into consideration any other matter than the validity of the mortgages offered to secure the bank. That if they are sufficient, the board have no concern whether A or B be stockholders. It is true, no such power is expressly given by the charter, but the argument on this head, takes too limited a view of the duties of the directors and their responsibilities. They are bound, not only to carry into effect, the express directions of the charter, but all other matters, which fairly result from its purport and spirit. The act of incorporation, does not confine itself alone to obtaining good security for the stock subscribed. It extends its views further. It anxiously provides that as many persons as possible shall have the privilege to offer this good security, and obtain loans on it, and it carefully guards against a monopoly, by enacting, that if there be an excess, reduction shall be made by taking the highest on the list, so that no subscriber shall be reduced while any remains who has taken a larger proportion of the stock. This limitation is personal, and the acts of the defendants, if sustained by the court, would enable them to evade the law. For, by dividing the subscription nominally, among many, who acted for one, the party who owned the stock would not suffer the deduction he must be subjected to, had it all stood in his name. That which cannot be done directly, the law will not suffer to be done indirectly. Had the defendant, who procured those subscriptions, presented the facts which this action has disclosed to the commissioners, and required of them to admit four, or any number of individuals to subscribe for stock in their names, for his benefit,

they could not have permitted him to do so, without a gross direliction of duty. His case cannot be made stronger by an attempt to conceal the real state of things from them, and the laws of the country would be subject to a just reproach, if they sanctioned such an evasion of the statute.

<div style="margin-left:2em;font-size:small;float:left">An act which attempts to evade the provisions of the charter, can confer no right on the party.</div>

In addition to the points filed in the cause, it was urged in argument, that if the court should decide the stock was illegally subscribed for, in the names of those who had lent their names to the owner of the property, that the proper decree would be, that the whole of it should stand in his individual name; but it is our opinion, that an act which attempted to evade the provisions of the charter, can confer no right on the party by whom it was committed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court, be affirmed with costs.